UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LUTHER M.,

        Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

        Defendant.

Case No. C18-5205 TSZ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting his testimony, lay witness testimony, and several medical opinions. Dkt. 14. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Plaintiff is currently 56 years old, has a high school education, and has worked as an HVAC installer, sheet metal worker, and a stock clerk. Administrative Record (AR) 71, 1108. Plaintiff had neck fusion surgery in 2002, but continued to work until 2004. AR 578, 106.

Plaintiff first applied for disability benefits in September 2008. AR 1089, 193. He alleges disability as of August 1, 2007. AR 1089. Plaintiff's applications were denied initially,

on reconsideration, and by an ALJ after a hearing in April 2010. AR 1089, 193-96, 100, 200-07. The Appeals Council remanded the case, however. AR 1089, 239-41. Meanwhile, plaintiff had a second neck fusion surgery in August 2011. AR 872-73.

After a new ALJ conducted hearings in January and June 2013, the ALJ issued a second unfavorable decision in August 2013, and the Appeals Council denied review. AR 1089, 132, 157, 59-72, 1-4. Plaintiff appealed to this court and, while his appeal was pending, filed a new application for Supplemental Security Income in September 2013. AR 1090, 1239. This court, based on the stipulation of the parties, remanded for consideration of new evidence in February 2015. AR 1219-20. Plaintiff's 2013 application was denied initially but, on reconsideration in April 2015, plaintiff was determined to be disabled as of September 2013. AR 1090, 1251. The Appeals Council, however, in September 2015, ordered the ALJ to consolidate the applications and issue a new decision. AR 1090, 1223-25.

The ALJ conducted hearings in August 2016 and July 2017. AR 1124, 1157. On December 28, 2017, the ALJ issued a decision finding plaintiff disabled beginning December 22, 2017, due to a change in age category, but not disabled prior to that date. AR 1089-1111.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the August 2007 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: cervical spine spondylosis with radiculopathy and without myelopathy, status post C5-6 and C6-7 fusion, status post C3-4 and C4-5 fusion, right shoulder tendonitis, and obesity.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work. He can reach overhead (above shoulder level) only occasionally, and below shoulder level frequently. He can occasionally balance, stoop, kneel, and crouch. He cannot crawl or climb. He must avoid even moderate exposure to extreme cold and heat, vibration, and hazards. He cannot drive. He cannot rapidly or repeatedly rotate his head from side to side, as would be necessary to drive; however, he can turn his body and head as necessary to look side to side. He can perform simple, routine tasks and follow short, simple instructions. He can do work that requires little or no judgment and can perform simple duties that can be learned on the job in a short period. He cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental superficial contact with the general public is not precluded.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** Prior to December 22, 2017, there were jobs that exist in significant numbers in the national economy that plaintiff could have performed, and thus he was not disabled. On December 22, 2017, applying the age categories non-mechanically and considering the additional adversities in this case, plaintiff's age category changed to an individual of advanced age. There were then no jobs that existed in significant numbers that plaintiff could perform, and thus he became disabled.

AR 1093-1110. The Appeals Council did not assume jurisdiction, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d).

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

**A.     Medical Opinions**

A treating physician's opinion is entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id*. The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

**1.     Thomas L. Gritzka, M.D.**

Dr. Gritzka, a board certified orthopedic surgeon, examined plaintiff in June 2012 and reviewed his medical records. AR 952-54. In a July 2012 report, he diagnosed plaintiff with

"Status post C5 through C7 anterior cervical discectomy and fusion; status post C3 to C5 cervical fusion"; "Diffuse cervical myelomalacia C6 (i.e. softening of the cervical spinal cord with neuronal loss)"; and "Diffuse multilevel cervical degenerative spondylosis." AR 959. Dr. Gritzka opined that, since September 2007, plaintiff has not been able to maintain full-time "sedentary, light or medium work." AR 959. Dr. Gritzka opined that plaintiff's complaints of chronic neck pain, sleep disturbances, difficulty grasping, and need to lie down were consistent with objective medical findings. AR 960. Dr. Gritzka opined that plaintiff could not perform light work because of arm and hand weakness, and could not perform sedentary work because either looking down at desktop level or up at a computer screen would be unsustainable. AR 959. Dr. Gritzka opined that plaintiff would need to lie down for two or more hours a day and, "on a more probable than not basis," this has been true since September 2007. AR 960. On a more probable than not basis, since September 2007, if plaintiff had attempted even sedentary work he would have missed three days of work per month. AR 961.

The ALJ gave Dr. Gritzka's opinions "little to no weight" because they were inconsistent with the medical record and plaintiff's activities, and because Dr. Gritzka relied heavily on plaintiff's attorney's representations of the record and "did not make an independent assessment of the facts." AR 1104-05.

### a. Medical Record

Conflict with the medical record can be a specific and legitimate reason to discount a doctor's opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions).

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 5

As the ALJ noted, plaintiff's treating neurosurgeon, Peter G. Brown, M.D., who performed plaintiff's second fusion surgery in August 2011, stated that the December 2011 follow-up MRI "looked good…." AR 1048. In January 2012, plaintiff reported he was "doing great" despite some remaining neck stiffness. AR 978. In April 2012, plaintiff was discharged from physical therapy because the goals, improved neck and arm range of motion and reduced pain, had been met. AR 983. Together, this is substantial evidence supporting the ALJ's finding that the medical evidence conflicted with Dr. Gritzka's opinions.[3]

Plaintiff argues that Dr. Gritzka reviewed the evidence, including imaging results and reduced range of cervical motion, and was better qualified to interpret the medical evidence than a layperson such as the ALJ. Dkt. 14 at 8. He points out that Dr. Gritzka found atrophy in the right arm. *See* AR 958. It is undisputed that plaintiff has a reduced range of neck motion, and the ALJ accounted for it in the RFC by limiting his side-to-side movement. *See* AR 1097. The ALJ accounted for some weakness in plaintiff's arms by limiting him to light work. AR 1097. Dr. Gritzka is indeed qualified to interpret imaging data, but it remains the ALJ's responsibility to resolve conflicts in the medical evidence. *See Andrews*, 53 F.3d at 1039.

The Court concludes that conflict with the medical record was a specific and legitimate reason to discount Dr. Gritzka's opinions.

---

[3] The ALJ also noted that, in January 2012, plaintiff reported the surgery had reduced the pain in his neck, especially when elevating or extending his arms. AR 943. The ALJ found that this directly contradicted plaintiff's report to Dr. Gritzka that he cannot do "any overhead work…." AR 955, 1104. Dr. Gritzka did not, however, opine that plaintiff was limited in overhead reaching. *See* AR 959-61. Regardless, the ALJ relied on sufficient other evidence that the medical evidence contradicted Dr. Gritzka's opinions. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (error harmless if "inconsequential to the ultimate disability determination").

### b. Plaintiff's Activities

Conflict with a claimant's activities may justify rejecting a medical opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Some of the cited activities did not conflict with Dr. Gritzka's opinions. The ALJ discounted Dr. Gritzka's opinions in part because plaintiff reported doing yard work, raking leaves, and playing with a three-year-old, although these activities increased his neck and shoulder pain. AR 1102 (citing AR 777, 788). Activities that plaintiff had to stop because of his impairments do not contradict Dr. Gritzka's opinions that plaintiff could not *sustain* full-time employment. The ALJ also cited a long list of activities, most relatively minor such as going outside and feeding a cat, but does not explain how these activities contradict Dr. Gritzka's opinions. AR 1102; *see also Garrison*, 759 F.3d at 1016 ("impairments that would unquestionably preclude work … will often be consistent with doing more than merely resting in bed all day"). The ALJ also cited "gold prospecting," but plaintiff described that activity as "walk[ing] with his girlfriend to a stream and *she* digs up the stream bottom, sluices it, and gives him the gold." AR 1580 (emphasis added). Being able to walk does not contradict Dr. Gritzka's opinions.

However, the ALJ also noted that in 2008 plaintiff reported he could "lift no more than 20 lbs," although by 2011 he stated he could only lift five pounds. AR 437, 509. The ability to lift 20 pounds contradicts Dr. Gritzka's opinions that, "[s]ince [plaintiff's] alleged onset date of 9/1/07," plaintiff has been unable to perform light work, which involves lifting a maximum of 20 pounds, or even sedentary work, with a 10-pound lifting limit. AR 959; *see also* AR 1046 (memo to Dr. Gritzka explaining lifting limits for sedentary and light work according to Social Security regulations).

1  Plaintiff's self-reported ability to lift up to 20 pounds was a specific and legitimate reason to discount Dr. Gritzka's opinions.

### c. Attorney Influence

The ALJ concluded that Dr. Gritzka "did not make an independent assessment of the facts" because plaintiff's attorney at the time, Ms. Lyon, provided a "'Personal History' and a brief summary of some of the medical evidence to Dr. Gritzka" and asked why he disagreed with plaintiff's treating physician's 2007 and 2008 opinions that plaintiff could perform sedentary or light work. AR 1105.

In the absence of "evidence of actual improprieties" an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). The Ninth Circuit has further explained:

> [T]he fact that the examination was conducted at the request of an attorney is relevant where the opinion itself provides grounds for suspicion as to its legitimacy. We have held the source of a referral to be relevant where there is no objective medical basis for the opinion, *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988), and where there is evidence of "actual improprieties" on the part of the doctor whose report the ALJ chooses to reject. *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (per curiam).

*Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). Here, Dr. Gritzka provided extensive medical findings to support his opinions, and neither the ALJ nor the Commissioner point to any evidence of actual improprieties. That Dr. Gritzka received a summary of evidence and specific questions prepared by plaintiff's attorney is not improper. He performed an extensive physical examination and reported the results of multiple objective tests, and there is no evidence that he altered his findings or opinions to suit plaintiff's attorney. The ALJ cited a case from outside this circuit in support of his conclusion that Dr. Gritzka "did not make an independent assessment of the facts." AR 1104. That case simply establishes that an attorney's summary that

was provided to a testifying expert should be made available for purposes of cross-examination. *See Elm Grove Coal Co. v. Dir., O.W.C.P.*, 480 F.3d 278, 303 (4th Cir. 2007) ("attorney-expert communications that explain the lawyer's concept of the underlying facts, or his view of the opinions expected from [testifying] experts, are not entitled to protection under the work product doctrine"). Here, plaintiff's attorney's summary and questions to Dr. Gritzka were made part of the record. *See* AR 1040-46. Although the attorney wrote "Please explain why you disagree" with the treating physician's opinion, Dr. Gritzka could easily have responded that, in fact, he agreed. *See* AR 1044. There is no evidence that Dr. Gritzka abdicated his professional responsibility as a doctor due to the wording of the questions.

As in *Nguyen*, Dr. Gritzka's "credibility is not subject to attack" on the basis of the source of the referral. 100 F.3d at 1465.

Although reliance on plaintiff's attorney was not a valid reason to discount Dr. Gritzka's opinions, inconsistency with the medical record and with plaintiff's activities were specific and legitimate reasons. The Court concludes the ALJ did not err by discounting Dr. Gritzka's opinions.

**2.      Mark Heilbrunn, M.D.**

In March 2015, Dr. Heilbrunn examined plaintiff and reviewed his March 2011 cervical MRI and June 2014 left knee MRI. AR 1583. Dr. Heilbrunn opined that plaintiff could occasionally lift/carry up to 10 pounds with either hand. AR 1587. Left hand grip strength was decreased, and he could not push or pull with it. AR 1588. Plaintiff could occasionally reach below shoulder level and never above shoulder level. *Id*. He could stand/walk three hours a day total, "at least" five minutes at a time. AR 1587.

The ALJ discounted Dr. Heilbrunn's opinions because they relied on plaintiff's discredited reports and were inconsistent with his own findings and other medical evidence. AR 1106-07.[4]

### a. Reliance on Plaintiff's Reports

An ALJ may discount a doctor's opinions that "are based 'to a large extent' on an applicant's self-reports and not on clinical evidence…." *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.* And an ALJ does not provide sufficient reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports the ultimate opinion with her own observations. *Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1199–1200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)).

The ALJ discounted Dr. Heilbrunn's opinions because plaintiff had not told him that he used an exercise bike, which he did mention to another doctor. AR 1107, 1580. Also, plaintiff told Dr. Heilbrunn that he "often needs help with dressing" yet he told another doctor that his daily activities include dressing, with no mention of needing help.[5] AR 1584, 1580. Yet there is

---

[4] The ALJ also discounted Dr. Heilbrunn's opinions because he only examined plaintiff once and reviewed few records. AR 1107. But an ALJ must consider all medical opinions, whether from treating, examining, or nonexamining medical sources. *See* SSR 96-6p, 1996 WL 374180 at *1 (S.S.A. July 2, 1996) ("adjudicator will always consider the medical opinions in the case record together with the rest of the relevant evidence").

[5] Other supposed inconsistencies the ALJ cited indicate a misreading the record. The ALJ wrote that "the claimant told Dr. Heilbrunn that he does no … cleaning," but plaintiff actually told Dr. Heilbrunn that he "does a small amount of sweeping and mopping." AR 1107, 1584. The ALJ wrote that plaintiff told providers that he "felt better after going outdoors and getting exercise" but the "exercise" was gold prospecting, which only required plaintiff to walk. AR 1107, 1441.

no indication that Dr. Heilbrunn's opinions were based heavily on plaintiff's self-reported activities. Dr. Heilbrunn performed a detailed physical examination, including measuring coordination, strength, reflexes, and range of motion. *See* AR 1585-87. Dr. Heilbrunn specifically stated that his lifting/carrying determination was "measured in the examination…." AR 1587.

In July 2014, plaintiff told a treatment provider that he injured himself by stepping into a gopher hole "while mowing the lawn…." AR 1590. This indicates that plaintiff was able to mow a lawn, which requires pushing and/or pulling with the arms. Dr. Heilbrunn opined that plaintiff "would have difficulty using his left hand for pushing and pulling but is able to use the right for this maneuver. The claimant is right-hand dominant." AR 1588. Dr. Heilbrunn's opinions are thus not inconsistent with plaintiff's ability to mow.

The ALJ also stated that Dr. Heilbrunn "relied on the claimant's subjective reports," but does not indicate how. AR 1107. The only subjective claim in Dr. Heilbrunn's report is that plaintiff rated "his neck pain, with medication, as '5-6/10.'" AR 1583. There is no dispute that plaintiff experiences neck pain. And there is no indication that Dr. Heilbrunn's opinions, which were based on an extensive physical examination, depended on this self-reported pain level.

The Court concludes the ALJ erred by discounting Dr. Heilbrunn's opinions as based more on plaintiff's self-reports than on clinical observations.

---

Plaintiff told another doctor that his "arm hurts making it difficult to shave" but shaving was not mentioned in Dr. Heilbrunn's report. AR 1580; AR 1107. Plaintiff told the other doctor that he did "yard work" and told Dr. Heilbrunn that he was "able to rake outside for a short period of time." AR 1107, 1580, 1584. These are not inconsistencies that suffice to discount Dr. Heilbrunn's opinion.

### b. Inconsistency with Own Findings

Incongruity between a physician's opinions and her own findings is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti*, 533 F.3d at 1041.

The ALJ found it inconsistent that Dr. Heilbrunn found "decreased dexterous movements and reduced strength in the upper extremities" yet found "normal gait; normal upper extremity sensation; no muscle atrophy and that wrist, hands, fingers, and thumbs were 'normal.'" AR 1107 (citations omitted). None of these are obviously contradictory, and no medical opinion in the record suggests that they are. Gait is not directly affected by arm and hand impairments. Sensation and strength are mediated by different neurons (sensory or motor), and impairment of one is not necessarily tied to impairment of the other. Atrophy may not follow weakness if the weak muscles are still being used. Dr. Heilbrunn reported that plaintiff's wrists, hands, fingers, and thumbs were normal in appearance, but tested their functional strength separately. AR 1586.

The Court concludes the ALJ erred by discounting Dr. Heilbrunn's opinions based on internal inconsistency.

### c. Inconsistency with Other Medical Evidence

Contradiction with other medical records is also a specific and legitimate reason to discount a doctor's opinion. *See Batson*, 359 F.3d at 1195. The ALJ concluded that "the longitudinal evidence suggests fewer restrictions than indicated by Dr. Heilbrunn." AR 1107. One example the ALJ gave was that Dr. Heilbrunn found upper extremity strength of 3/5 bilaterally, while plaintiff's treating doctor Adam Burkey, M.D., found 5/5 strength bilaterally in July 2015. AR 1107, 1586, 1547.[6] A few weeks after plaintiff's August 2011 fusion surgery, his

---

[6] The ALJ also stated that "most other treatment notes show few, if any, findings of significant weakness or reduced dexterity…." AR 1107. But the notes the ALJ cited do not include

arm strength was already 4+/5. AR 881. By November 2011 it was up to 5/5. AR 970. In addition, Dr. Heilbrunn did not have the benefit of seeing the December 2011 MRI, which plaintiff's treating neurosurgeon said "looked good…." AR 1048. Taken together, inconsistencies with the overall medical record were a sufficiently specific and legitimate reason to discount Dr. Heilbrunn's opinions.

Although two of the reasons the ALJ provided were improper, the error was harmless because one proper reason remains. *See Molina*, 674 F.3d at 1115 (error harmless if inconsequential to the ultimate nondisability determination); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (because valid reasons to discount claimant's testimony remain, inclusion of erroneous reasons was harmless). The Court concludes the ALJ did not err by discounting Dr. Heilbrunn's opinions.

### 3. Daniel Fredericks, M.D.

In October 2009, based on an examination, Dr. Fredericks opined that plaintiff would have marked, or very significant, limitations on his abilities to stand, walk, lift, handle, and carry, and could only sustain sedentary work. AR 761. The ALJ discounted these opinions because the report did not include objective findings, and the opinions were inconsistent with the overall medical evidence and plaintiff's activities. AR 1106. The only clinical findings were neck pain and a range of motion that is decreased to an unspecified degree. AR 760. The report also states "see chart" but no chart is attached. AR 760. An ALJ need not accept a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Because the ALJ provided the specific and legitimate reason that Dr. Fredericks' opinions were

---

measures of strength or dexterity. *See* AR 1396-1517, 1605, 1693-1757.

brief, conclusory, and unsupported by clinical findings, the Court concludes the ALJ did not err by discounting his opinions.

### 4. Jeffrey Tan, M.D.

In July 2014, plaintiff's treating physician, Dr. Tan, filled out a Physical Functional Assessment Form. AR 1081-83. He opined that plaintiff could sit for four hours and stand for four hours per day total, and would need to recline or rest for four hours a day. AR 1081. He opined that plaintiff could lift five pounds and carry up to 20 pounds. AR 1081. Plaintiff could reach, handle, or finger only 30 minutes each per day. AR 1081-82. Neck range of motion was decreased. AR 1082. Plaintiff would be off task more than 30% of the time, and would miss three days of work per month. AR 1083.

The ALJ gave Dr. Tan's opinions "little weight" because he failed to provide sufficient rationale. AR 1106. The basis for Dr. Tan's opinions was the "Orthopedic Evaluation by Thomas Gritzka, MD dated 7/03/12…." AR 1083. Dr. Tan's own examinations typically recorded only reduced neck range of motion and tenderness, which do not account for his opinions of extreme limitations. *See*, *e.g.*, AR 1398, 1420-21. Because the ALJ permissibly discounted Dr. Gritzka's opinions, he also permissibly discounted Dr. Tan's opinions that relied on them.

The Court concludes the ALJ did not err by discounting Dr. Tan's opinions.

### B. Plaintiff's Testimony

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 14

symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

Plaintiff argues that the ALJ erred by failing to provide reasons to discount his allegation that due to discomfort he could only sleep about 4.5 hours a day, leading to daytime fatigue and sleepiness. Dkt. 14 at 14. Plaintiff cites *Laborin* for the proposition that the ALJ must discredit each allegation separately. Dkt. 14 at 14-15 (citing *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017)). *Laborin* provides that "the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '*which* testimony [the ALJ] found not credible' and explaining '*which* evidence contradicted that testimony.'" *Laborin*, 867 F.3d at 1155 (alterations in original) (quoting *Brown–Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)). Plaintiff interprets this to mean that the ALJ can only reject an allegation if other evidence contradicts that specific allegation. Dkt. 14 at 15 ("each of the many reasons the ALJ did offer to discredit Plaintiff did so only in general, not in direct contradiction to his sleep claims"). However, once an ALJ has specified which evidence contradicts which testimony, the Ninth Circuit permits the ALJ to make a more general credibility assessment based on the contradiction or any other specific, clear, convincing reason. *See*, *e.g.*, *Thomas*, 278 F.3d at 960 ("the ALJ properly rejected her testimony by … providing a specific, clear and convincing reason [to conclude] that her testimony was generally not credible"); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.").[7] The Court must therefore uphold the

---

[7] In *Laborin*, according to the concurrently filed unpublished disposition, the ALJ approached the claimant's testimony piecemeal and rejected each symptom based on inconsistencies, and thus the reviewing court analyzed the ALJ's decision in a similar piecemeal fashion. *See Laborin v. Berryhill*, 692 Fed. Appx. 959, 961 (2017). A symptom-by-symptom approach is not

1  ALJ's credibility determination if he provided a specific, clear and convincing reason supported
2  by substantial evidence. *Trevizo*, 871 F.3d at 678.

3  The ALJ discounted plaintiff's testimony as inconsistent with the medical evidence, his
4  own statements, and his activities. AR 1099, 1101, 1102. Plaintiff does not challenge these
5  reasons. For example, in November 2011, four months after his second fusion surgery, he
6  denied arm weakness and the doctor found full upper extremity strength. AR 970. His own
7  statement, and the medical evidence, thus conflict with his allegations that he cannot lift more
8  than five pounds. AR 509, 538. Plaintiff reported a pain level of three out of ten and a
9  functional level of eight out of ten, conflicting with his allegation that he "can't do anything"
10 because of pain. AR 983, 1604, 169. With regard to sleep concerns, in at least one treatment
11 note plaintiff attributed his poor sleep not to pain but to "financial concerns." AR 785; AR 1100.
12 The inconsistencies cited by the ALJ, including these examples, were a sufficiently specific,
13 clear, and convincing reason to discount plaintiff's testimony, which includes his sleep
14 allegations.

15 The Court concludes the ALJ did not err by discounting plaintiff's testimony.

16 **C.  Lay Witness Statement**

17 An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v.*
18 *Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

19 Plaintiff's girlfriend submitted a function report in 2010, stating that plaintiff can only lift
20 five pounds, cannot reach above his shoulders, can only walk one block and sit for ten minutes,

---

22 required, however. *See Light*, 119 F.3d at 793 (reversing and remanding because "the ALJ failed
   to articulate an acceptable reason either for disbelieving Light's testimony in general or for
23 discrediting his pain testimony specifically").

and cannot hold things for more than five to ten minutes.  AR 478.  The ALJ discounted her statement because her allegations, which were generally the same as plaintiff's, were similarly inconsistent with the overall record.  AR 1108.  Because the reasons to discount plaintiff's testimony were clear and convincing, it follows that they also met the lower standard for germane reasons.  *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").  The Court concludes the ALJ did not err by discounting plaintiff's girlfriend's statement.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 7th day of February, 2019.

_____
Thomas S. Zilly
United States District Judge

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 17